UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| LUXOTTICA OF AMERICA INC., | |
| Plaintiffs, | |
| -vs- | **Civil Action No.** _____ |
| BRAVE OPTICAL, INC., JEFFREY GRAY AND DAWN GRAY | |
| Defendants. | |

## ORIGINAL VERIFIED COMPLAINT

Plaintiff Luxottica of America Inc. ("Luxottica") files this Original Verified Complaint against Defendants Brave Optical, Inc., Jeffrey Gray, and Dawn Gray (collectively "Brave Optical Parties") and would show as follows:

## INTRODUCTION

1.     This lawsuit arises from the violation of intellectual property rights of Luxottica of America Inc. by the Brave Optical Parties' ongoing unauthorized use and display of Luxotica's's valuable trademarks and service marks in connection with a retail optical store located at 1713 Preston Rd., Ste. A, Plano, Texas 75093, Pearle Vision store #8655 ("Park and Preston Store" or "Store") following the expiration of Defendants' franchise agreement with Luxottica for the Store. Through this action, Luxottica seeks to address Defendants' activities and to protect unknowing consumers from believing they are doing business with a Luxottica franchise store.

## PARTIES

2.     Plaintiff Luxottica of America Inc. is an Ohio corporation doing business in Texas and authorized to do business in Texas.

ORIGINAL VERIFIED COMPLAINT - 1

3.      Defendant Brave Optical, Inc. ("Brave Optical") is a Texas corporation, and may be served through its registered agent, Jeffrey Gray, at 6579 Mountain Sky Road, Frisco, Texas 75034, or wherever he may be found.

4.      Defendant Jeffrey Gray is an individual residing in the State of Texas who may be served at 6579 Mountain Sky Road, Frisco, Texas 75034, or wherever he may be found.

5.      Defendant Dawn Gray is an individual residing in the State of Texas who may be served at 6579 Mountain Sky Road, Frisco, Texas 75034, or wherever she may be found.

## JURISDICTION AND VENUE

6.      This is an action for unfair competition and trademark infringement arising under certain United States statutes, namely 15 U.S.C. § 1114 and 15 U.S.C. § 1125 (§§ 32 and 43 of the "Lanham Act," respectively).

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action involves claims of unfair competition and trademark infringement arising under 15 U.S.C. §§ 1114 and 1125 (§§ 32 and 43 of the Lanham Act, respectively).

8.      Venue is proper pursuant to 28 U.S.C. § 1391 and § 1338(a).

## FACTUAL BACKGROUND

A.  **Famous Pearle Vision Brand and Marks**

9.      Luxottica operates and franchises distinctive optical retail stores throughout the United States under the brand "Pearle Vision."

10.     To identify the source, origin, and sponsorship of Luxottica's facilities, products, and services, Luxottica has extensively employed, caused to be advertised, and publicized throughout the United States certain distinctive symbols as legally protected trademarks and

service marks (the "Pearle Vision Marks"), including but not limited to those detailed in this Complaint.

11.     Luxottica has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Pearle Vision Marks.  As a result, locations bearing the Pearle Vision Marks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality stores with high quality products sourced from Luxottica (the "PEARLE VISION® Stores").

12.     Luxottica was the first to adopt and use the Pearle Vision Marks as trademarks and service marks, and all right, title, and interest to the Pearle Vision Marks and the design, decor, and image of Pearle Vision stores remain vested solely in Pearle Vision.

13.     Luxottica operates and franchises PEARLE VISION® Stores using the Pearle Vision Marks on signs, boards, posters, equipment, and other items, and in advertising to the public through television, radio, and print media.

14.     The Pearle Vision Marks include the following United States Federal Trademark Registrations:

| Registration Number | Trademark | Good and Services |
|---|---|---|
| 3492219 |  | Retail optical services |

| 3492222 |  | Retail optical stores |
|---|---|---|
| 2349286 |  | Retail optical stores |
| 1538542 |  | Retail optical store, optometric and opticians' services |

15.     The registrations of the Pearle Vision Marks are currently in full force and effect, and Pearle Vision has given notice to the public of the registration of the Pearle Vision Marks as provided in 15 U.S.C. §1111.

16.     The registration of the Pearle Vision Marks constitutes *prima facie* evidence of their validity and conclusive evidence of Luxottica's exclusive right to use the Pearle Vision Marks in connected with the services identified therein.

17.     The registration of the Pearle Vision Marks also provides constructive notice to Defendants of Luxottica's ownership and exclusive rights to the Pearle Vision Marks.

18.     The Pearle Vision Marks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

19.     The Pearle Vision Marks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

ORIGINAL VERIFIED COMPLAINT - 4

20.     Luxottica has spent many millions of dollars advertising and promoting stores, services, and products with the Pearle Vision Marks.

21.     The substantial investment made in the Pearle Vision Marks has resulted in valuable goodwill for the Pearle Vision Marks and for the stores, products, and services bearing those marks. Pearle Vision products and services have met with popular approval and, as a result of Pearle Vision's extensive sales, advertising, promotion, and publicity, the public is familiar with the Pearle Vision Marks. The products and services associated with the Pearle Vision Marks are understood by the public to be produced, marketed, sponsored, supplied by, and/or affiliated with Pearle Vision.

22.     Pursuant to license agreements between Luxottica and its franchisees, Luxottica grants its franchisees a limited license and authority to use and display the Pearle Vision Marks, but only in such manner, and at such locations and times, as are expressly authorized by Luxottica. Pursuant to these license agreements, a franchisee is not authorized to use the Pearle Vision Marks after the expiration or termination of its license agreement. Such unauthorized use is expressly prohibited under the terms of all Luxottica license agreements, including the Brave Optical Parties' license agreement with Luxottica.

**B.  License Agreement with Brave Optical**

**i.   <u>License Agreement and Assignment and Assumption Agreement</u>**

23.     In 2016, the Brave Optical Parties bought an optical retail store located at Park and Preston in Plano, Texas from a former Pearle Vision franchisee, Gutman Vision, Inc. ("Gutman Vision"), and Luxottica's license agreement with Gutman Vision was transferred and assigned to the Brave Optical Parties.

24.     Since 2016, the Brave Optical Parties have been continuously operating the Store as a PEARLE VISION® Store using the Pearle Vision Marks, system, and corporate support and holding themselves out to the public as a PEARLE VISION® Store.

25.     Gutman Vision had been operating the Store under the Franchise Agreement by and between Luxottica Retail North America Inc. and Gutman Vision, Inc. for Pearle Vision Location #8655 ("License Agreement").[1]

26.     On June 28, 2016, Pearle Vision, Gutman Vision, and the Brave Optical Parties entered into an Assignment and Assumption of License Agreement ("Assignment and Assumption Agreement") for the Store.[2]

27.     Through the Assignment and Assumption Agreement, the Brave Optical Parties took over all obligations and duties under the License Agreement and Ancillary Agreements with Luxottica that had previously been the responsibility of Gutman Vision:

> Assignment and Assumption.  On the Closing Date, [Gutman Vision] assigns to [Brave Optical] all of [Gutman Vision]'s right, title and interest in and to the License Agreement and Ancillary Agreements for the Licensed Business and [Brave Optical] irrevocably and absolutely assumes each and every duty and obligation of [Gutman Vision], if any, to [Pearle Vision], and hereby also becomes the debtor under any Security Agreement, and in furtherance thereof, grants to [Pearle Vision] a security interest in the Collateral (as defined in the License Agreement), all as if [Brave Optical] had been the original debtor under the Security Agreement.[3]

28.     As confirmed by the Brave Optical Parties with their signatures on the Assignment and Assumption Agreement, the Brave Optical Parties were "provided a copy of the License Agreement, and any Ancillary Agreements, along with all amendments and schedules thereto"

[1] See Exhibit 1, License Agreement.
[2] See Exhibit 2, Assignment and Assumption of License Agreement for Park and Preston Store.
[3] Exhibit 2, para. 2(a).

prior to closing, and they were "familiar with all obligations being assumed under the License

Agreement and Ancillary Agreements."[4]

29.     The License Agreement grants the Brave Optical Parties the right to use Pearle

Vision's trademarks in accordance with the License Agreements.[5] The License Agreement states:

> The Marks are the exclusive property of Pearle Vision, and nothing
> in this Agreement gives Franchisee any right, title or interest in or
> to any of the Marks except as a mere privilege and license during
> the term of this Agreement to display and use the Marks according
> to the limitations set forth in this Agreement.[6]

30.     Luxottica's enforcement rights and right to injunctive relief for trademark violation

are specifically detailed in the License Agreement:

> Franchisee explicitly affirms and recognizes the unique value and
> secondary meaning attached to the Pearle Vision System and the
> Marks. Accordingly, Franchisee agrees that any non-compliance
> with the terms of this Agreement, or any unauthorized or improper
> use of the Pearle Vision Systems or the Marks will cause irreparable
> damage to Pearle Vision and other franchisees of Pearle Vision. If
> Franchisee engages in any non-compliance with the terms of this
> Agreement, or in any unauthorized and/or improper use of the Pearle
> Vision System or Marks, during or after the termination or
> expiration of this Agreement, Pearle Vision will be entitled to both
> temporary and permanent injunctive relief against Franchisee from
> any court of competent jurisdiction, in addition to all other remedies
> that Pearle Vision may have at law or in equity. Franchisee consents
> to the entry of temporary and permanent injunctions of that type,
> and Franchisee waives the posting of any bond by Pearle Vision in
> connection with those injunctions.[7]

31.     The License Agreement specifically states, "Franchisee's right to use the Pearle

Vision System and the Marks ceases immediately upon the Expiration Date or upon termination

of this Agreement."[8]

---

[4] Exhibit 2, para. 5(f).
[5] Exhibit 1, § 7.
[6] Id. at § 7.1(A).
[7] Exhibit 1, § 7.3.
[8] Exhibit 1, § 19.1.

32.     The License Agreement also provides:

> Franchisee will at all times agree to defend, at Franchisee's own cost, and indemnify to the fullest extent permitted by law, Pearle Vision, its Affiliates, successors, assigns, and designees of such entity, and the respective directors, officers, employees, agents, attorneys, shareholders, designees and representatives of each (collectively, the "Indemnitees") from all losses and expenses (as defined below) incurred in connection with any action, suit, proceeding, claim…which arises out of or is based upon any of the following…Franchisee's alleged violation or breach of any warranty, representation, agreement, or obligation in this Agreement.[9]

33.     "Losses and expenses" include "…costs; expenses;…attorneys' fees; …court costs; …compensation for damages to Pearle Vision's reputation and goodwill…"[10]

**ii. Personal Guarantees**

34.     Exhibit B to the Assignment and Assumption Agreement are contracts entitled, "Guaranty and Assumption of Licensed Operator's Obligations" (hereinafter, the "Personal Guarantees"), which were executed by Dawn Gray and Jeffrey Gray individually.[11]  In the Personal Guarantees, both Dawn Gray and Jeffrey Gray agreed as follows:

> Payment and Performance Obligations. Guarantor unconditionally, absolutely and irrevocably guarantees the full and prompt payment of [Brave Optical's] obligations and liabilities to Pearle Vision under any Agreement.  Guarantor agrees to be personally bound by and liable for the full, prompt and unconditional performance of all obligations under any Agreement now owed or hereafter to be owed by Licensed Operator to Pearle Vision, including without limitation, any obligations of Licensed Operator under the Agreements relating to transfer, indemnification, and non-competition.[12]

---

[9] Exhibit 1, § 11.3.
[10] *Id*.
[11] Exhibit 2.
[12] *Id*.

ORIGINAL VERIFIED COMPLAINT - 8

### iii. **Non-Compete Agreements**

35.     Jeffrey Gray and Dawn Gray individually also executed Confidentiality/Covenants Not to Compete for the Store on June 21, 2016 ("Non-Compete Agreements").[13]

36.     The Non-Compete Agreements state:

I further agree that I will not, either directly or indirectly, engage or participate in a Competing Business…for a period of one year after my ownership or employment ends for any reason and within a three (3) mile radius of the Licensed Location, except as otherwise provided in the License Agreement. I am prohibited from engaging in any such Competing Business as a proprietor, partner, investor, shareholder, director, officer, employee, principal, agent, advisor or consultant thereof.

37.     The Non-Compete Agreements also expressly contemplate injunctive relief and the Brave Optical Parties' payment of costs in the event of a violation:

I acknowledge that violation of the covenants not to compete contained herein would result in immediate and irreparable injury to Pearle Vision and Licensed Operator for which no adequate remedy at law will be available. Accordingly, I hereby consent to the entry of an injunction procured by Pearle Vision or Licensed Operator prohibiting any conduct by me in violation of the terms of this Agreement. I agree to pay all costs and expenses, including reasonable attorneys' and experts' fees, incurred by Pearle Vision and Licensed Operator in connection with the enforcement of this Agreement.

## C.  **State Court Proceeding**

38.     On July 5, 2017, the Brave Optical Parties filed a lawsuit against Gutman Vision and its principals for alleged fraudulent misrepresentations related to the transfer of the Store, among other causes of action, in the 101st District Court of Dallas County, Texas ("State Court Proceeding").[14]

39.     After Gutman Vision designated Luxottica as a responsible third party, the Brave Optical Parties joined Luxottica as a party to the State Court Proceeding.

---

[13] Exhibit 2's Exhibit A (p. 5)- Confidentiality/Covenant Not to Compete Agreement.
[14] *See Jeffrey Gray, Dawn Gray and Brave Optical, Inc. v. Gutman Vision. Inc., Alex Gutman and Milana Gutman*, cause number DC-17-07929, pending in 101st Judicial District Court, Dallas County.

ORIGINAL VERIFIED COMPLAINT - 9

40.     On March 15, 2022, the state court issued its Order on Summary Judgment, dismissing Luxottica with prejudice from the State Court Proceeding.[15] The Order on Summary Judgment also awards Luxottica franchise fees owed by the Brave Optical Parties to Luxottica through January 2022.

## D.  Expiration of the License Agreement

41.     The License Agreement for the Store was originally set to expire on November 22, 2021.[16]  The Brave Optical Parties requested, and Luxottica agreed, to a three-month extension of the License Agreement.[17]

42.     On February 11, 2022, Luxottica sent a Notice of Non-Renewal of Franchise Agreement ("Notice of Non-Renewal") advising the Brave Optical Parties that the License Agreement would expire on the agreed-upon date of February 28, 2022 and would not be renewed.[18]

43.     The Notice of Non-Renewal also instructed the Brave Optical Parties to take specific actions to comply with their obligations to deidentify as a PEARLE VISION® Store. Those obligations expressly survive the License Agreement.

## E.  Use of Pearle Vision Marks After Expiration of License Agreement

44.     Upon expiration of the License Agreement, Defendants were required to comply with the obligations upon termination contained in Paragraph 19 of the License Agreement.

45.     Among other actions, Paragraph 19 required the Brave Optical Parties to cease using the Pearle Vision Marks "immediately upon the expiration date" of the License Agreement. Though the Amendment to License Agreement to Extend Expiration Date expired on February 28,

---

[15] *See* Exhibit 3, Order on Summary Judgment.
[16] *See* Exhibit 1, § 1.8.
[17] *See* Exhibit 4, Amendment to License Agreement to Extend Expiration Date.
[18] *See* Exhibit 5, Notice of Non-Renewal.

2022, the Brave Optical Parties continue to hold themselves out to the public and operate as a PEARLE VISION® Store and use the Pearle Vision Marks.

46.     The License Agreement also prohibits the Brave Optical Parties from promoting themselves as either a current or former Pearle Vision franchisee, and from using any of Pearle Vision's trade secrets, promotional materials, the Pearle Vision Marks, or any other mark confusingly similar.[19]

47.     Paragraph 19 of the License Agreement further requires Defendants to make any changes or removals at the Stores immediately upon Pearle Vision's request so as to effectively distinguish the Stores from their former appearance and from any other PEARLE VISION® Store, and also to transfer all telephone numbers and related directory listings to Pearle Vision.[20]

48.     The Brave Optical Parties continue to operate the Store and continue to use Pearle Vision's registered trademarks at the Store in express violation of the License Agreement and Pearle Vision's instructions in the Notice of Non-Renewal.[21]

49.     On March 25, 2022, Luxottica's investigator visited the Store, which was open and operating, and took the following photo showing the continued use by Defendants of the Pearle Vision Marks:



---

[19] Exhibit 1, § 19.1.
[20] Exhibit 1, §§ 19.1 and 19.3.
[21] The Order on Summary Judgment in the State Court Proceeding does not include Royalty and Marketing and Advertising Fees accrued since January 2022.

ORIGINAL VERIFIED COMPLAINT - 11

50.     The Brave Optical Parties are now in direct competition with Pearle Vision by operating the Store without a License Agreement, without Luxottica's authority, and without paying franchise fees to Luxottica, and are in violation of their Non-Compete Agreements.

51.     Pursuant to the Non-Compete Agreements and Section 14.2 of the License Agreement, the Brave Optical Parties are prohibited from operating or participating in a retail optical store or optometric office within a radius of three miles from the Store for a period of one year following the expiration of the License Agreement.

52.     The Brave Optical Parties are in violation of their post-termination obligations under the License Agreement by failing to make the necessary changes and/or trademark removals at the Store and by failing to transfer all telephone numbers and related directory and internet listings to Pearle Vision.

53.     The Brave Optical Parties are unlawfully using various Pearle Vision Marks in connection with the Store's continued operation.

**F. Likelihood of Consumer Confusion and Deception**

54.     The Brave Optical Parties have not tendered to Luxottica, or removed from the Store, all Pearle Vision signs, logos, posters, containers, fixtures, stationary, and other items bearing the Pearle Vision Marks, name, symbols, or slogans, or which are otherwise identified with Pearle Vision and are located at the Store.

55.     The Brave Optical Parties' continued use and display of the Pearle Vision Marks or any items associated with the Pearle Vision name, symbols, or slogans at the Store is without Pearle Vision's license or consent, and has caused, or is likely to cause, mistake, confusion, or deception in the minds of the public as to source, affiliation, and sponsorship.

56.     Upon seeing the familiar Pearle Vision Marks through the Brave Optical Parties'

ORIGINAL VERIFIED COMPLAINT - 12

unauthorized use thereof, consumers will be deceived into concluding that the products and services sold at the Store are made or supplied by Luxottica, are prepared in the prescribed Luxottica manner and subject to Luxottica's supervision, are sponsored or endorsed by Luxottica, and bear the Pearle Vision Marks pursuant to Luxottica's authority and permission. Such impressions are calculated to and will have a material influence on customers' purchasing decisions, inducing them to patronize the Store in reliance on the goodwill, reputation, and appeal of Luxottica.

57.     By reason of the foregoing, Luxottica has suffered damages, in an amount presently unknown yet substantial. Luxottica no longer is the source or sponsor of the Store and does not endorse the Store, or the products and services provided therein. Luxottica has not authorized the Brave Optical Parties to use the Pearle Vision Marks to identify the Store, products, or services, and has protested against such use.

58.     By virtue of the expiration of the License Agreement, Luxottica is unable to control the nature and quality of the goods and services that the Brave Optical Parties provide at the Store.

59.     Luxottica will suffer serious, immediate, and irreparable harm if Defendants' willful infringement of the Pearle Vision Marks is not immediately enjoined. Luxottica's goodwill and reputation will suffer drastically by virtue of the public's identification of Luxottica with the management and operation of the Store. Luxottica monitors and enforces strict quality control over every phase in the marketing of Pearle Vision's products and services, from manufacture to the supervision of and the maintenance of strict standards as to quality and service. The carefully nurtured image that the Pearle Vision brand now enjoys will be irretrievably injured by any association with the Store, which is no longer subject to Luxottica's supervision.

60.     The Brave Optical Parties' sale of products and services under the Pearle Vision

Marks at the Store poses an immediate threat to the distinct, exclusive image Luxottica has created at great expense for its franchisees. Pearle Vision stores, services, and products are known by the Pearle Vision Marks, which are emblematic of their distinctive source. Pearle Vision stores enjoy a special appeal to consumers which will be harmed by the existence of an infringing store selling non-genuine products and services bearing the distinctive Pearle Vision Marks. The intangible, but commercially indispensable, value that the Pearle Vision locations now enjoy will be severely undermined by the operation of the Store.

61.     Consumer confusion as to the source or sponsorship of stores bearing the Pearle Vision Marks will be attended not only by an inevitable loss of retail store and product distinctiveness, image, and goodwill, but will also cause a diversion of sales from Luxottica. The economic injury to Luxottica resulting from such diversion is incalculable and, as such, is an additional source of irreparable harm.

**COUNT I – LANHAM ACT INFRINGEMENT**

62.     Luxottica re-alleges the above Paragraphs as if fully set forth herein.

63.     The Brave Optical Parties' acts at the Stores constitute infringement of Pearle Vision's Luxottica's registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. 67. As a result of Defendants' violations, Luxottica is entitled to preliminary and permanent injunctive relief, as well as monetary relief pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, including, but not limited to, royalties derived from Defendants' sales following the expiration of their License Agreement, damages sustained by Luxottica, the costs of this action, treble damages, and reasonable attorneys' fees incurred herein.

**COUNT II – LANHAM ACT FALSE DESIGNATIONS**

64.     Luxottica re-alleges the above Paragraphs as if fully set forth herein.

65.     Defendants' acts at the Stores and in various advertisements constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66.     As a result of Defendants' violations, Luxottica is entitled to preliminary and permanent injunctive relief, as well as monetary relief pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, including, but not limited to, royalties derived from Defendants' sales following the termination of their License Agreement, damages sustained by Luxottica, the costs of this action, treble damages, and reasonable attorneys' fees incurred herein.

### COUNT III – COMMON LAW TRADEMARK INFRINGEMENT

67.     Luxottica re-alleges the above Paragraphs as if fully set forth herein.

68.      Defendants' acts at the Stores constitute unlawful trademark and service mark infringements under the common law.

69.     As a result of Defendants' violations, Luxottica is entitled to preliminary and permanent injunctive relief, as well as monetary relief, including, but not limited to, royalties derived from Defendants' sales following the expiration of the License Agreement, damages sustained by Luxottica, the costs of this action, treble damages, and reasonable attorneys' fees incurred herein.

### COUNT IV – COMMON LAW UNFAIR COMPETITION

70.     Luxottica re-alleges the above Paragraphs as if fully set forth herein.

71.     Defendants' acts at the Store constitute unfair competition under the common law.

72.     As a result of Defendants' violations, Luxottica is entitled to preliminary and permanent injunctive relief, as well as monetary relief, including, but not limited to, royalties derived from Defendants' sales following the termination of their Franchise Agreements, damages sustained by Luxottica, the costs of this action, treble damages, and reasonable attorneys' fees

incurred herein.

**COUNT V – BREACH OF NON-COMPETE AGREEMENTS**

73.     Luxottica re-alleges the above Paragraphs as if fully set forth herein.

74.     Defendants' continued operation of the Park and Preston Store after expiration of the License Agreement constitutes a breach of the Non-Compete Agreements.

75.     This breach has directly and proximately caused loss and damage to Luxottica.

76.     Pursuant to the terms of the Non-Compete Agreements, Defendants have already agreed that such breach would result in immediate and irreparable injury to Luxottica for which no adequate remedy would exist, and they further consented to the entry of an injunction compelling their compliance with those obligations.

77.     As result of Defendants' breaches of the Non-Compete Agreements, Luxottica is entitled to preliminary and permanent injunctive relief, as well as monetary relief, including but not limited to royalties from Defendants' sales following the termination of their Franchise Agreements, damages sustained by Luxottica, the costs of this action, treble damages, and reasonable attorneys' fees incurred herein.

**COUNT VI – BREACH OF PERSONAL GUARANTEES (AGAINST JEFFREY GRAY AND DAWN GRAY)**

78.     Luxottica re-alleges the above Paragraphs as if fully set forth herein.

79.      Pursuant to the Personal Guarantees, Jeffrey Gray and Dawn Gray unconditionally and irrevocably guaranteed the performance of all obligations of Brave Optical, Inc., as franchisee of the Store, to Luxottica under the License Agreement.

80.     The failure of Jeffrey Gray and Dawn Gray to ensure compliance with the obligations under the License Agreement constitutes a breach of the Personal Guarantees.

81.     This breach has directly and proximately caused loss and damage to Luxottica, for

which Luxottica seeks monetary damages and reasonable attorneys' fees.

### COUNT VII – UNJUST ENRICHMENT

82.     Luxottica re-alleges the above Paragraphs as if fully set forth herein.

83.     Luxottica conferred a benefit upon the Brave Optical Parties by allowing them to use and display the Pearle Vision System and the Pearle Vision Marks in connection with their operation of the Stores, and by providing various other benefits under the parties' agreements.

84.     The Brave Optical Parties continued to retain these benefits following the termination of their License Agreement without compensating Luxottica for any royalties derived from their post-termination sales, where compensation would be reasonably expected and under the circumstances where it would be inequitable for Defendants to retain such benefits without payment to Luxottica.

85.     At all times, Defendants had knowledge of these benefits conferred upon them by Luxottica.

86.     Defendants have been unjustly enriched by, and should therefore compensate, Luxottica for royalties, advertising fees, and merchandise ordered and received post-termination of the License Agreement.

### <u>DEMAND FOR ATTORNEYS' FEES AND COSTS</u>

87.     The agreements at issue in this case provide that the Brave Optical Parties will pay Pearle Vision's attorneys' fees and costs to bring this suit. Pearle Vision hereby demands that it be reimbursed by the Brave Optical Parties for all costs and expenses (including attorneys' fees) relating to the prosecution of this action.

88.     Additionally, Plaintiffs seeks recovery of attorneys' fees under the Lanham Act.

## **PRAYER**

WHEREFORE, Luxottica demands judgment against the Brave Optical Parties as follows:

A.      For preliminary and permanent injunctions enjoining the Brave Optical Parties, and all persons acting on their behalf, in concert with them, or under their control, from:

(1) manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the Pearle Vision Marks, or any colorable imitation thereof, at the Store;

(2) displaying or using any of the Pearle Vision Marks to advertise or promote the sale of, or to identify, the Store, or any product or service provided therein; and

(3) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that the Brave Optical Parties, the Store, and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Luxottica.

B.      For preliminary and permanent injunctions directing the Brave Optical Parties, and all persons acting on their behalf, in concert with them, or under their control, to:

(1) recall and deliver up to Luxottica or destroy all signs, banners, labeling, packaging, advertising, promotional, display, and point-of purchase materials which bear, or make reference to, any of the Pearle Vision Marks, or any colorable imitation of the Pearle Vision Marks;

(2) recall and deliver up to Luxottica all copies and editions of the Manual that is in their actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto, and all other materials containing store operating instructions, store business practices, or plans of Luxottica;

(3) allow Luxottica, at a reasonable time, to enter the premises of the Stores and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from their appearance as PEARLE VISION® stores; and

(4) account and pay over to Luxottica all gains, profits, and advantages derived by the Brave Optical Parties from their trademark and service mark infringement, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117, by the License Agreement, and by the controlling principles of common law.

C.      For money damages, plus three times additional actual damages Luxottica has sustained by reason of the Brave Optical Parties' trademark and service mark infringement and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

D.      For punitive damages because of the willful nature of the Brave Optical Parties' actions;

E.      For pre-judgment interest and Luxottica's reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Franchise Agreement and, because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

F.      For an order directing the Brave Optical Parties to file with the Court, and to serve on Luxottica's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which the Brave Optical Parties have complied with such injunction or order;

G.     For compensatory damages, attorneys' fees, and costs against the Brave Optical Parties as a result of their breaches of the License Agreement, the Personal Guarantees, and the Non-Compete Agreement;

H.     For all costs, disbursements, and expenses of this action; and

I.     For all such other relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ Mary M. Melle*
**Mary M. Melle**
Texas Bar No. 24051789
mmelle@cbsattorneys.com
**Gwen E. Bhella**
Texas Bar No. 24046632
gbhella@cbsattorneys.com
**CALHOUN, BHELLA & SECHREST, LLP**
325 N. Saint Paul St., Ste. 2300
Dallas, Texas 75201
(214) 981-9200 (t)
(214) 981-9203 (f)

**ATTORNEYS FOR PLAINTIFF**
**LUXOTTICA OF AMERICA INC.**

ORIGINAL VERIFIED COMPLAINT - 20

## <u>VERIFICATION OF COMPLAINT</u>

I, David Reiter, being competent to testify, depose and state as follows:

I am currently the Vice President of Franchise Operations with Luxottica of America Inc. and am also a custodian of records for Luxottica of America Inc.  I am authorized to act as agent of Luxottica of America Inc. for purposes of verifying the foregoing complaint.

I have read the foregoing Original Verified Complaint and have personal knowledge of the contents thereof.  The statements contained in the Original Verified Complaint are true and correct based on my personal knowledge and my review of company business records that were made at or near the time of the event or condition recorded and kept in the regular course of business of Luxottica of America Inc.  As to any matters in the complaint stated to be alleged upon information and belief, I believe those matters to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 28, 2022.

_____
David Reiter