# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| LUXOTTICA OF AMERICA, INC. § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> BRAVE OPTICAL, INC., JEFFREY § <br> GRAY, AND DAWN GRAY, § <br> *Defendants*. § <br> § | Civil Action No.  4:22-cv-00244 <br> Judge Mazzant |

### **MEMORANDUM OPINION & ORDER**

Pending before the Court is Plaintiff's Motion for Temporary Restraining Order (Dkt. #10). After reviewing the motion and relevant pleadings, the Court finds that the motion should be **DENIED**.

### BACKGROUND

This case concerns a trademark dispute between Plaintiff Luxottica of America, Inc. ("Luxottica") and Defendants Brave Optical, Inc., Jeffrey Gray, and Dawn Gray (collectively the "Brave Parties") regarding Defendants' use of Luxottica's trademarks and service marks at a vision store they own and operate in Plano, Texas.

### I.     Luxottica's Pearle Vision Brand, the 2016 Sale, and the License Agreement

Luxottica operates and franchises distinctive optical retail stores throughout the United States under the brand "Pearle Vision" (Dkt. #1 ¶ 9). As part of its branding, Luxottica advertises and publicizes certain "distinctive symbols as legally protected trademarks and service marks" (the "Pearle Vision Marks") (Dkt. #1 ¶ 10). Luxottica operates and franchises PEARLE VISION® Stores using the Pearle Vision Marks on signs, boards, posters, equipment, and other items, and in advertising to the public through television, radio, and print media (Dkt. #1 ¶ 13).

Pursuant to license agreements between Luxottica and its franchisees, Luxottica grants its franchisees a limited license and authority to use and display the Pearle Vision Marks, but only in such manner, and at such locations and times, as are expressly authorized by Luxottica (Dkt. #1 ¶ 22). In 2016, Jeffrey Gray and Dawn Gray of the Brave Parties purchased an optical retail store located in Plano, Texas ("Store 8655") from a former Pearle Vision franchisee, Gutman Vision, Inc. ("Gutman Vision") (Dkt. #1 ¶ 23). As part of the sale, Pearle Vision, Gutman Vision, and the Brave Parties entered into an Assignment and Assumption of the License Agreement (the "License Agreement") for Store 8655, whereby the Brave Parties took over all obligations and duties under the License Agreement that had previously been the responsibility of Gutman Vision (Dkt. #1 ¶ 23, 27). Since then, the Brave Parties have operated Store 8655 using the Pearle Vision Marks (Dkt. #1 ¶ 24).

## II. The Ongoing State Court Action

In 2017, the Brave Parties filed suit against Gutman Vision and its principals for alleged fraudulent misrepresentation in connection with the 2016 sale of Store 8655 in the 101st Judicial District Court, Dallas County, Texas, (the "State Action") (Dkt. #14 at p. 2). In 2019, the Brave Parties added Luxottica to the State Action, alleging that Luxottica knowingly assisted the fraud by making affirmative misrepresentations and concealing material facts to induce the Brave Parties into the sales transactions (Dkt. #14 at p. 2).

### A. Expiration of the License Agreement and the State Court Injunction

By its terms, the License Agreement between Luxottica and the Brave Parties for Store 8655 was originally set to expire on November 22, 2021 (Dkt. #1 at p. 10). However, on August 23, 2021, the parties agreed to extend the expiration date of the License Agreement to February

28, 2022 (Dkt. #1, Exhibit 5).[1]  On February 11, 2022, Luxottica sent a Notice of Non-Renewal to the Brave Parties, informing them that the License Agreement of Store 8655 would not be renewed upon its expiration and ordering them to cease all business operations and use of the Pearle Vision trademark upon the License Agreement's expiration on February 28, 2022 (Dkt. #1, Exhibit 6).

On February 24, 2022, the Brave Parties filed an application for a temporary restraining order and injunctive relief against Luxottica in the State Action, which the state court granted the next day (Dkt. #14 at p. 3).  In the application, the Brave Parties explained that injunctive relief was necessary to maintain the status quo through the State Action's trial for several reasons—namely, because compliance with the demands in the Notice of Non-Renewal would cause the Brave Parties to default on their lease at Store 8655 and an existing SBA loan (Dkt. #14 at p. 3). On March 10, 2022, after holding a temporary injunction hearing, the state court entered a temporary injunction (the "State Injunction") (Dkt. #14, Exhibit B).  As explained in the State Injunction, the state court found that "the last actual, peaceful, and non-contested status enjoyed by the parties was at the time that [the parties] were operating under the August 23, 2021, Status Quo Agreement" and accordingly that "that status should be maintained for the protection of all parties pending resolution of this lawsuit" (Dkt. #14, Exhibit B at p. 7).  Accordingly, the State Injunction prohibited Luxottica from taking any of the following actions until the conclusion of the State Action's jury trial:[2]

(a) Interfer[ing] in any way with [the Brave Parties'] business operations at Store No[]. 8655 [] [] including, but not limited to, prohibiting the use of the Pearle Vision System and the Marks (as defined), or contacting any third party such as Google or Warrantech and informing them that any of [the Brave Parties'] locations are closed;

---

[1] Technically, per the terms of the Agreement entered into on August 23, 2021, the parties agreed to extend the expiration date of the License Agreement "until the earlier of (a) February 28, 2022, (b) the execution of a new License Agreement or (c) the final resolution of the Lawsuit" (Dkt. #1, Exhibit 5).
[2] Originally, the State Action was set to be tried during the two-week docket call beginning May 3, 2022 (Dkt. #14, Exhibit B at p. 9).  However, the State Action has been continued to September 6, 2022 (Dkt. #26 at p. 3).

(b) Requir[ing] immediate payment of all sums allegedly due under the Franchise Agreement for Store 8655 . . . ;
(c) Requir[ing] the disposition of any assets used in the operation of Store No[]. 8655 . . . ;
(d) Requir[ing] any change of appearance at Store No[]. 8655 . . . ;
(e) Requir[ing] the discontinuation or cessation of telephone number under the name Pearle Vision or Pearle;
(f) Requir[ing] the transfer of any telephone numbers or related items directory listings;
(g) Requir[ing] the return of Pearle Vision manuals or Pearle Vision System materials;
(h) Requir[ing] a copy of all customer retail records[;]
(i) Enforc[ing] any non-competition provisions including but not limited to those contained in Section J of the Notice of Non-Renewal; [and]
(j) Interfer[ing] in any way with [the Brave Parties'] point of sale system, Acuity Logic.

(Dkt. #14, Exhibit B).

On March 17, 2022, Luxottica filed an Emergency Motion for Clarification or Dissolution of Temporary Injunction in the State Action (Dkt. #14, Exhibit C).[3] Luxottica's motion sought clarification regarding, among other things, (i) whether the State Injunction applied to EyeMed Vision Care LLC, another party in the State Action; (ii) whether the State Injunction applied to both stores operated by the Brave Parties or just Store 8655; (iii) the breadth of the term "interfering" as used in the State Injunction; and (iv) whether the State Injunction extended only to the completion of trial or until the completion of any subsequent appeals as well (Dkt. #14, Exhibit C). On March 23, 2022, Luxottica filed a First Amended Emergency Motion for Clarification or Dissolution of Temporary Injunction, reiterating its objections to the breadth of the State Injunction (Dkt #18, Exhibit 2).

On March 25, 2022, the state court held a hearing on the motion for clarification. During

---

[3] Between March 15 and March 21, 2022, Judge Michael O'Neill, a visiting retired judge, was assigned to the 101st District Court while District Judge Staci Williams was out (Dkt. #18 at p. 2). During that time, Judge O'Neill granted summary judgment in favor of Luxottica, dismissing all of the Brave Parties' claims against Luxottica (Dkt. #18 at p. 2). However, the Brave Parties subsequently filed an objection to Judge O'Neill under the Texas Government Code, which allows a party to make a timely objection to a visiting judge, and Judge O'Neill's orders were eventually set aside.

the hearing, counsel for Luxottica urged the state court to clarify the term "interfere" as used in the State Injunction.  More specifically, counsel for Luxottica argued that the term was vague because it potentially left Luxottica unable to support Store 8655 as a franchise, specifically noting that there was confusion as to whether Luxottica could send the Brave Parties monthly statements, franchise reports, or other marketing materials (Dkt. #17).  Further, Luxottica's counsel reiterated Luxottica's intent to file claims in federal court and the need for clarity to ensure that the State Injunction did not prohibit this action (Dkt. #17).

On March 29, 2022, the state court issued an order clarifying the State Injunction (the "Clarification Order") (Dkt. #14, Exhibit D).  The Clarification Order revised the State Injunction to: (i) remove EyeMed Vision Care LLC; (ii) remove all references to Store 8683; and (iii) to only extend to completion of the trial (Dkt. #14, Exhibit D).  Notably, the Order further clarified that (i) "[t]he term 'interfere' as used in the [State] Injunction is only intended to mean actions to force Plaintiffs to close down Store #8655[;]" (ii) the State Injunction "does not prohibit Luxottica of America Inc. from pursuing claims against Plaintiffs in federal court[;]" and (iii) the State Injunction "does not prohibit Luxottica of America Inc. from sending statements of account, franchise reports, or other franchise-related materials that are not for the purpose of closing Store #8655" to the Brave Parties (Dkt. #14, Exhibit D).

On March 28, 2022, one day before the state court issued its clarification, Luxottica filed its suit against the Brave Parties in this Court (Dkt. #1). Luxottica alleged that the continued use of the Pearle Vision trademark constituted trademark infringement, and, among other things, requested that the court issue preliminary and permanent injunctions to prevent the Brave Parties' use of the Pearle Vision Marks (Dkt. #1).  On March 30, 2022, Luxottica filed a notice of appeal

of the State Injunction in the State Action (Dkt. #14 at p. 6).[4]

On April 1, 2022, Luxottica filed the present motion, requesting that the Court "temporarily restrain[] and enjoin[] [the Brave Parties] from use of [Luxottica's] PEARLE VISION® trademark and service mark" (Dkt. #10). On April 13, 2022, the Brave Parties filed their response, arguing that the TRO violated the Anti-Injunction Act by countermanding the pre-existing State Injunction (Dkt. #14). On April 13, 2022, the Court held a hearing on the motion. On May 4, 2022, Luxottica filed its reply, arguing that the TRO had been "narrowly tailored" to comply with the constraints of the State Injunction (Dkt. #18).

## LEGAL STANDARD

A party seeking a temporary restraining order must establish the same elements needed to obtain a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) a substantial threat plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

---

[4] The Court is unaware of any progress on the appeal.

## DISCUSSION

Luxottica petitions the Court to issue a temporary restraining order to enjoin the Brave Parties from using the Pearle Vision Marks (Dkt. #10).  In response, the Brave Parties argue that the Court should deny Luxottica's application for a temporary restraining order because (1) the TRO would directly countermand the already-issued State Injunction, and, therefore, violate the Anti-Injunction Act; and (2) Luxottica has failed to prove each element of its entitlement to injunctive relief (Dkt. #14).  The Court turns to the Brave Parties' first argument—namely, that the Anti-Injunction Act prohibits this Court from issuing the injunctive relief Luxottica seeks.

The Anti-Injunction Act prohibits federal courts from issuing injunctions to "stay proceedings in a State court."  28 U.S.C. § 2283.  The Supreme Court has interpreted this to mean that "a federal court may not issue an injunction countermanding a state court injunction." *Harris Cnty Tex. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 313 (1999) (stating that a federal injunction which counters a state injunction already in effect violates the Anti-Injunction Act whether issued against the court itself or the bound parties).  Further, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic C.L.R. Co. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 297 (1970).  Thus, federal courts must maintain a strong presumption towards noninterference with state court proceedings. *See id.*  Indeed, the Act, on its face, "is an absolute prohibition aagainst [sic] enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Id*. at 286.[5]

---

[5] The three exceptions in which Congress and the Supreme Court have determined it is appropriate for a federal court to enjoin state court proceedings are: (1) where such injunction is "expressly authorized by Act of Congress;" (2) where the injunction is "necessary in aid of [the federal court's] jurisdiction;" or (3) where the injunction is entered "to protect or effectuate [the court's] judgments." 28 U.S.C. § 2283; *Swanston v. Windhaven Farm Homeowners*

Here, pursuant to the State Injunction, the state court previously enjoined Luxottica from undertaking a number of activities in connection with the Brave Parties' business operations at Store 8655 (*see* Dkt. #14, Exhibit B).  For example, the State Injunction enjoined Luxottica from "interfer[ing]" with Store 8655's business operations, which "includ[ed], but [was] not limited to, prohibiting the [Brave Parties'] use of the Pearle Vision System and the Marks . . . or contacting any third party . . . and informing them that any of [the Brave Parties'] locations are closed" (Dkt. #14, Exhibit B at p. 7) (Dkt. #14, Exhibit B).  Additionally, the state court enjoined Luxottica from "requir[ing] any change of [the] appearance of Store [] 8655 " and "requir[ing] the return of Pearle Vision manuals or Pearle Vision System materials" (Dkt. #14, Exhibit B at p. 8).  And, importantly, the State Injunction still remains in effect as it was ordered to "continue until the completion of the trial of this cause"—which has not yet occurred. (Dkt. #14, Exhibit B at p. 8).

However, focusing heavily on the state court's Clarification Order, Luxottica argues that the TRO it seeks presently does not violate the State Injunction because the state court "clarifie[d] that the term 'interfere' is only intended to mean 'actions to force [the Brave Parties] to close down Store #8655'" (Dkt. #18 at p. 5).  And, according to Luxottica, it does not seek to close down Store 8655—it only seeks to stop the Brave Parties from using the Pearle Vision Marks.  Further, again relying on the state court's Clarification Order, Luxottica asserts that the state court expressly "confirmed Luxottica could bring these Lanham Act claims . . . in federal court" (Dkt. #18 at p. 5).  Thus, because the State Court Injunction *only* prohibits Luxottica from closing Store 8655 and the state court gave Luxottica express permission to file in federal court, Luxottica claims the TRO does not countermand the State Injunction (Dkt. #18 at p. 6).  Nevertheless, the Court remains unpersuaded by Luxottica's arguments because its reading of the State Injunction is too narrow.

---

*Ass'n., Inc*., No. 4:19-CV-00151, 2019 WL 12875433, at *3 n.2 (E.D. Tex. Apr. 3, 2019). Neither party alleges that any of the Act's narrowly construed exceptions apply because none of them do.

To begin, both parties agree that the State Injunction, as clarified by the state court, expressly forbids, among other things, Luxottica from taking "actions to force [the Brave Parties] to close down Store #8655" (Dkt. #14, Exhibit D). Indeed, Luxottica hones in on this explicit prohibition in the Clarification Order to argue that the relief it seeks—that the Brave Parties be temporarily enjoined from use of the Pearle Vision Marks—does not contravene the state court's clear prohibition—that Luxottica may not take actions to close down Store 8655. However, the problem with this argument is that it completely ignores other portions of the State Injunction that were not altered by the Clarification Order. Accordingly, even if the Court accepted Luxottica's argument regarding the Clarified Order, it would still be unable to issue the requested relief without countermanding the State Injunction.

Indeed, though Luxottica argues that the State Injunction *only* prohibits Luxottica from closing the stores, the State Injunction, as clarified by the state court, prohibits Luxottica from doing much more. Yet, these prohibitions would be flouted if the Court accepted Luxottica's argument and found that the State Injunction did *not* enjoin Luxottica from prohibiting the use of its Pearle Vision Marks. To be sure, by clarifying the term "interfere," the state court did not amend or alter other provisions of the State Injunction. However, these provisions expressly prohibit Luxottica from, for example, taking actions like "requir[ing] any change of appearance at Store No[]. 8655," "requir[ing] the disposition of any assets used in the operation of Store No[]. 8655" or "requir[ing] the return of . . . Pearle Vision materials"—actions that Luxottica seeks to accomplish in-effect by its request that the Brave Parties be "temporarily restrained and enjoined from use of [Luxottica]'s PEARLE VISION trademarks" (Dkt. #18 at p. 5).

In other words, Store 8655 plainly bears the Pearle Vision Mark on its storefront entrance (Dkt. #1 at p. 11). And the State Injunction—in provisions left wholly untouched by the

9

clarification of the term "interfere"—expressly prohibit Luxottica from taking actions like "requir[ing] any change of appearance at Store No[]. 8655" (Dkt. #14, Exhibit B at p. 8). Yet, the removal of the Pearle Vision Marks from the storefront is exactly what Luxottica seeks with its application for the TRO. Indeed, though Luxottica recognizes that it cannot compel change to the store's performance, it asks the Court to do so. But the Court's enjoinment of this would completely circumvent the State Injunction. Thus, Luxottica's argument must fail because its premise is wrong—the State Injunction does not *only* prohibit Luxottica from closing Store 8655. Rather, the State Injunction prohibits Luxottica from taking a number of actions—a number of which Luxottica seeks to in-effect circumvent by asking this Court to enjoin the Brave Parties from using the Pearle Vision marks.[6]

Moreover, the Court is unpersuaded by Luxottica's reliance on the Clarification Order. To be sure, Luxottica argues that its requested relief "is not prohibited" because the state court, in its Clarification Order, (1) "redefined" the term "interfere," and (2) "gave Luxottica express permission to file in federal court" (Dkt. #18 at p 6). However, the Court finds these arguments unavailing. First, as noted *supra*, Luxottica's argument that the state court's clarification of the term "interfere" permits the removal of the Pearle Vision Marks as long as Store 8655 does not close entirely cannot be supported by the rest of the State Injunction.

Second, that the state court gave Luxottica express permission to file federal claims does

---

[6] Likewise, as the Brave Parties point out, Luxottica's requested relief and its reading of the State Injunction would create inherent contradictions. For example, if this Court granted Luxottica's requested relief, the Brave Parties would be expressly enjoined from using the Pearle Vision Marks at Store 8655, but, at the same time, per the State Injunction's preservation of the status quo, the Brave Parties would still be holding out to the public in a number of ways that their stores are Pearle Vision stores. Indeed, as the Brave Parties assert, they would continue to use Pearle Vision's point of sale system, operating manuals, marketing materials and still be advertising to the public through telephone and directory listings that the Brave Parties' stores—all actions that Luxottica cannot prohibit under the State Injunction.

not mean that the state court endorsed Luxottica's specific federal claims against the Brave Parties. Indeed, the state court simply clarified that the State Injunction "does not prohibit Luxottica of America, Inc. from pursuing claims against [the Brave Parties] in federal court" (Dkt. #14, Exhibit D at p. 3). Yet, authorizing Luxottica to bring a federal action against the Brave Parties does not suggest that the state court empowered Luxottica to seek relief that countermands its own State Injunction. That would defy common sense.

Moreover, approving the filing of claims in federal court is far different from approving the filing of a TRO in federal court—which is what Luxottica seeks here. To be sure, when pressing for clarification, Luxottica made no mention of the TRO itself—it only mentioned its intent to file Lanham Act claims in federal court. Thus, Luxottica's reference to its intent to bring federal claims and the subsequent clarification does little to persuade that the state court intended to permit the specific relief at hand—that Luxottica could prohibit the use of the Pearle Vision trademarks without violating the State Injunction.

In sum, the Court may not grant the actions requested under the TRO without directly risking interfering with active state proceedings. *See Moore v. Louisiana ex. rel. Insurance Rating Com'n (LIRC)*, 459 F. Supp.2d 504, 508 (M.D. La. 2006) (stating that federal courts must show extreme deference to state proceedings). To put it bluntly, the Court finds that the requested TRO violates the Anti-Injunction Act. While the Lanham Act claims themselves may be brought independent of the state proceedings, the relief presently before the Court may not be granted without impeding on the power of the State Injunction. Out of deference to the state court's ability to effectively adjudicate its own proceedings, the Court finds that it must deny the motion.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Temporary Restraining Order (Dkt. #10) is hereby **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 18th day of August, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE